AMOS CLARY AND HENRY CLARY *vs.* JACOB FRAYER.
*June,* 1837.

A bill of sale of personal property, duly executed, acknowledged and recorded, is as valid and effectual to pass the legal title to the vendee, as if there was an actual delivery of the property transferred.

The vendee in such case is clothed with the constructive possession, and is legally competent to convey it to any third person.

The enrolment is a substitute for, and takes the place of actual delivery, and repels all those imputations of fraud, which would arise from the retention of possession by the grantor.

J. E. being the owner of a horse and other articles of personalty, by bill of sale, dated 23d January, 1833, and duly executed, acknowledged and recorded, conveyed the same to W: the vendor retaining the possession. W. on the 31st December of the same year, by assignment, endorsed on the instrument, transferred for a valuable consideration which was paid, all his right and title to the property therein mentioned to A. and H. which assignment was also acknowledged before a justice of the peace; and on the same day, went to the house of J. E. where the property, except the horse then was, and delivered several of the articles to A. and H. saying to them, "you will surely get the said black horse—go and get him wherever he may be." *Held* to be sufficient to pass the property to A. and H. the plaintiffs, and to enable them to support *replevin*, against a party who claimed under a subsequent sale, made under execution against the original vendor.

APPEAL from *Frederick* county court.

This was an action of *replevin* for a black horse called "*Figure*," commenced on the 10th January, 1834, by the appellants against the appellee. Issues were joined on the pleas of *non cepit*—property in the defendant, and not in the plaintiffs.

At the trial the plaintiffs proved that the horse was raised by their father, *John E. Clary,* and then proved a bill of sale, dated 23d January, 1833, from him, duly executed, acknowledged, and recorded, for various articles of personal property including the horse replevied, to a certain *William H. Poole,* on which was written and proved, the following

endorsement—" December 31st, 1833, for value received, I do hereby assign all my right and title to the property named in the within bill of sale to *Amos and Henry Clary*, and have sold all my right to said property to them.

WILLIAM H. POOLE."

This transfer was also acknowledged before a justice of the peace. The plaintiffs then proved that on the 31st December, 1833, the said *Poole* went with them to the house of the said *John E. Clary*, where the property in the said bill of sale specified was, except the black horse *Figure*, which said horse was then absent from the said house, and premises of said *John E. Clary*, in possession of said *John E. Clary*, who had rode said horse from home; that said *Poole* bargained and contracted with the plaintiffs to sell, and did sell them all the property in said bill of sale mentioned, so far as the same remained; the said black horse and several other articles were then so remaining and undisposed of, for the same consideration, a sum of money in said bill of sale mentioned, and which was then paid by the said plaintiffs to the said *Poole;* that the said *Poole* then delivered to the said plaintiffs several of the articles of property mentioned in said bill of sale, and told the said plaintiffs, " you will surely get the said black horse—go and get him wherever he may be;" that the said plaintiffs then took possession of the said other articles of property mentioned in said bill of sale, so far as the same remained, and actually sold a part of them, and retained the other part; the said plaintiffs went the day afterwards to find the said black horse, and found that he was in the possession of a *Mr. Chaney*, who refused to deliver him to the said plaintiffs; that afterwards said *Chaney* offered said black horse for sale, and the said defendant then became the purchaser, the plaintiffs telling said defendant before he bought, that they had bought said black horse from *Poole*.

The defendant then proved that from the date of said bill of sale up to the 31st December, 1833, the said *John E. Clary* remained in the actual possession of all said property

in said bill of sale specified, and sold a part thereof and used other parts thereof; and that previous to the time when said *Poole* came to the house of said *John E. Clary* as aforesaid, the said *John* had gone away with the said horse and did not return until several days afterwards, and then returned without said horse, and that while thus absent the said horse was levied upon by said *Chaney*, a constable, as the property of said *John E. Clary* under a *fieri facias*, and sold publicly under the writ, to the defendant, who paid the purchase money and received the horse; that the proceedings against *Clary* was regular and duly executed.

The plaintiffs prayed the court to instruct the jury, that if they believed the evidence, it was a sufficient proof of a sale and delivery of the said black horse by *Poole* to the said plaintiffs, to entitle them to recover in the action; which instruction the court, (*J. Buchanan, Ch. J. and T. Buchanan, J.*) refused to give. The plaintiffs excepted, and the verdict and judgment being against them, they brought the cause by appeal to this court.

It was submitted on written arguments to STEPHEN, ARCHER, DORSEY, and CHAMBERS, Judges.

BRENGLE, for the appellants.

1. The contract of sale was not a transfer of an equitable right; it transferred, and was intended to transfer the thing itself, the horse in controversy. What equitable right is it pretended was transferred? How enforced? It would be difficult to designate the appellants' right, if more equitable and still more difficult to point out the way of reaching or enforcing it. It was intended to give the appellants a legal right, a right of property in the horse, and a right to the immediate possession of him, and this intent is clearly manifest from the language of the *whole* contract, and the very nature of the transaction, and its subject matter. What else could the parties have intended? The appellants took actual possession of the chattels sold, except the *black horse*, and again sold them; this was intended by the parties to the con-

tract, and what was intended in reference to these chattels, was intended in reference to the *black horse*.

2. Could *Poole* make this contract? *Poole* was the absolute owner of the horse, and had not only a mere *chose in action;* there was no adversary claim by *John E. Clary*, he had, to be sure, the actual possession, but this by permission and assent of *Poole*, determinable by the mere will of *Poole;* suppose A. had injured the said horse while in the possession of *John E. Clary*, *Poole* might have brought trespass, *vi et armis*. *John E. Clary* had no *right* to the possession, to use the thing, he had the occupation of it only. 1 *Chitty Plea.* 154, *margin.* 2 *Camp.* 465. If there had been a right to possession in *John E. Clary*, for a time, and not controllable by *Poole*, then *Poole* would have had no right to bring an action of trespass, *vi et armis*. If the appellants had not the right to demand immediate possession after sale, let me ask who could demand possession? *Poole* could not, obviously, he had parted with every thing, call it by what name you may, he then had neither right of property nor right of possession, and yet it will not be pretended that a right of immediate possession to the horse became extinguished by the sale, or that such right thereby was created in *John E. Clary*, it follows then, that this right was in the appellants. If they had the property in the thing, and a right to demand possession, they are entitled to recover. *Cullum vs. Bevans,* 6 *Har. and John.* 469, &c. See also *Baker and others vs. Fale,* 16 *Massa.* 147.

3. To their possession it is sufficient to say, that there was a delivery of the property; there was actual and bodily delivery of part, with direction to take the other; this is a delivery.

4. There was no question of fraud in the case, this was not pretended—the whole was a question of the right to maintain this action by the appellants, they never having possession, &c. it might as well be now contended, that the jury were precluded from finding a previous sale of the horse to A. Fraud cannot be presumed, &c. In this case, as set

forth in the record, and which is the whole case, the prayer does not invade the province of the jury; it left the facts in the cause wholly with the jury, whilst it asks the court's opinion on the law thereon.

5. It is not necessary to prove taking, &c.—it is enough to have a right to demand possession of property. 6 *Har. and John.* 469.

W. Schley, for the appellee.

The prayer, which was offered by the plaintiffs' counsel, affirmed, as *a conclusion of law* upon the facts, (supposing all the testimony to be accredited by the jury,) that there was " sufficient proof of a sale and delivery of the horse by *Poole* to the plaintiffs, to entitle the plaintiffs to recover in this action." The court refused to give the instruction asked for; and to that *refusal,* the plaintiffs excepted.

If the instruction asked for was not demandable, *as a legal right,* and *to the extent claimed,* the court below was bound to refuse it. The court below, however, was not bound to give any qualified instruction upon a specific prayer, demanding instruction in terms. It was open to the plaintiffs to offer any other prayers, which his counsel might think it advisable to make.

The only question, then, to be discussed here is, " was there *sufficient proof* of a sale and delivery &c. *to entitle the plaintiffs to recover?*"

There was no delivery, in fact, by *Poole* to the plaintiffs; nor did the plaintiffs ever obtain actual possession of the horse, until after the commencement of this suit. The prayer assumes that this was unnecessary.

It is equally certain that *Poole* never had the actual possession of the horse. His title was by virtue of a bill of sale, dated 23d January, 1833, duly executed, acknowledged and recorded. The property remained in the possession of the vendor, *John E. Clary ;* and the horse in controversy was levied upon, as his property, at the suit of his creditors, on the 1st of January, 1834. The plaintiffs claim title to the

horse, under a purchase made, on the day preceding, (viz. 31st December, 1833,) from *Poole*. The contract is as follows, " December 31st, 1833. For value received, I do hereby *assign* all my *right and title* to the property named in the within bill of sale, to *Amos and Henry Clary*, and have sold all my *right* to said property to them.

WILLIAM H. POOLE.&quot;

1. My first position is, that *Poole*, by this contract, only meant to transfer, and has only in fact transferred his *interest* in *the bill of sale ;* and his *right*, by force thereof, that is, *under the bill of sale*, to the plaintiffs.

The bill of sale is a mere muniment of title; and the assignment thereof, would give the assignees a mere equitable right; not a legal title. If it be an assignment of his *right* under the bill of sale, and not a substantive of the property, then, *even if the assignment had been under seal, and had been recorded*, it would not clothe the assignees with a legal right, so as to enable them, in a court of law, to bring an action to recover possession of the property.

In all sales of personal property there is an implied warranty of title, and an obligation to deliver. In this case, the assignment is general of his right and title to *all* the property. In point of fact, the vendor had used much of this property, and had sold part:—can it be pretended, that under the contract, signed by *Poole*, he is answerable to the assignees, for what was so used and sold ? I suppose not. He meant merely to transfer his *right* to the property ; not to sell the specific chattels. The contract will not bear any other interpretation, without, as it seems to me, disregarding the intention of the parties as carefully expressed.

2. My second position is, that even if *Poole* had intended to make a substantive sale of the horse, he was not in a predicament to do so. The horse was in the actual possession of another ; and *Poole's* right was a mere *chose in action*. He had the right of property under his absolute bill of sale ; he had the immediate right of possession, and could himself

have maintained *replevin :* but he had not the possession of the horse, and was not in a situation to deliver him.

Now I admit, in the fullest manner, the efficacy of the bill of sale, to transfer the property from *John E. Clary* to *Poole.* Notwithstanding that the vendor retained possession, the same interest is transferred by this bill of sale, under the act of 1729, as if possession, in fact, had accompanied the transfer of the right. But the right of property, when unaccompanied by possession, actual or constructive, is a mere *chose in action ;* so an immediate right of possession, without more, is a *mere chose in action.* " *A chose or thing in action* is contra-distinguished from a chose or thing in possession. If it be not in *possession,* it must be *in action ;* and so *vice versa.* "

Now supposing the right of property in the horse, to be *a mere chose in action* in *Poole,* it is very clear that this right cannot be assigned, so as to entitle the assignee to *sue in his own name* in a court of *law. Co. Litt.* 214, *a,* 266, *a,* 2 *Rolls. Abr.* 45, 46. *Master vs. Miller,* 4 *T. R.* 340. As to the effect of the assignment in equity, and the efficacy there of notice to the defendant, it is unnecessary to inquire, as we are now in a court of law.

If the possession of *John E. Clary,* was an adversary possession, there could be no doubt. The case of *Stogdel vs. Fugate,* 2 *Marsh. Rep.* 136, is an express authority in such a case. In that case there was direct proof, that at the time of the sale of the chattels in controversy, they were in the possession of another, who claimed absolute dominion over them. In this case there is no such proof; and I admit that if the *possession* of *John E. Clary* is the *possession* of *Poole,* then the horse was a *chose* in possession of *Poole,* and not a mere *chose in action.* Now I say that the act of 1729, does not consider the possession of the mortgagor, donor or vendor, as the possession of the mortgagee, donee or vendee.

It says that *the right of property* shall be transferred, notwithstanding that there is *no change* of possession. I distinguish between an immediate *right of possession* in *Poole,* and *a constructive possession* in *Poole.*

Under the bill of sale, he had the former; but not possession in fact or in law. The actual possession of *Clary*, the vendor, was not the constructive possession of *Poole*, the vendee. The act of 1729 cannot be construed to work a statutory change of *possession :* it allows a transfer of the *right of property*, notwithstanding that there is no transmutation of possession. It makes the possession of the vendor consistent with the right of property in the vendee. Still the right of the vendee is *necessarily* but *a chose in action,* because not a chose in possession. Although *Poole* then had an immediate *right* of possession, and could sue in his own name; yet, forasmuch as he had not *possession* of the horse, he could not, by a sale of his right of property, transfer to his vendee this right of action.

Thus far I have considered the point, without regard to whether *John E. Clary* held adversely or not. Virtually I have conceded for the argument, that he did not make any claim to the property himself. But am I bound to do so? It is not proved that he did hold adversely; but *non constat*, that he did not so hold. The evidence is, that when *Poole* and the plaintiffs went together to *John E. Clary's* house, "the black horse was absent from the said house and premises of the said *John E. Clary*, in the possession of the said *John E. Clary*, who had rode said horse from home." It is worthy of remark, too, that when *Poole* and the plaintiffs had made their contract, *Poole* said " you will surely get the black horse; go and get him wherever he may be." It was also proved that from the date of the bill of sale, up to the time of the assignment of the bill of sale, that " the said *John E. Clary* remained in the actual possession of all said property, and sold part thereof, and used other part thereof." The horse was also put in the stable of the innkeeper, by *John E. Clary ;* and this the day after the assignment, and he went off with the horse, on the very day, perhaps, that the plaintiffs and *Poole* came to his house. Now might not the jury have reasonably inferred from all these facts, this user and disposal of part of the property, and the carrying away

of the horse, under the circumstances, that *John E. Clary* claimed some right in this horse? But if the instruction had been given, as prayed, this point would not have been open for discussion. It would have trenched upon the province of the jury.

3. My third position is, that even if *Poole* had constructive possession of the horse, the sale by him made, (being unaccompanied with delivery of possession, and not being by writing, duly executed, acknowledged and *recorded,*) did not, as against this defendant, transfer to the plaintiffs a right of property in the horse.

It is very true that the defendant is not a creditor of *Poole ;* nor does he claim under the creditors of *Poole.* The position is, that a sale of personal property, in this state, where the vendor retains possession, although good *inter partes,* and good against persons claiming by, from or under the vendor, his executors, &c. is void, as against third persons. It is very true that in the several cases upon the act of 1729, the judges speak of creditors, &c. as if the sale was good against all persons, *except* creditors of the vendors. But the question now proposed is not made in any of the cases, nor is it decided in any of them, nor intended so to be. The court are requested to look at the 5th and 6th sections of the act of 1729, ch. 8, and then to decide whether a sale by a person, who retains the possession of the chattel, transfers any property to the vendee, as against third persons, not privies, except where there is a bill of sale, duly executed, acknowledged and recorded.

This proposition concedes for the argument, that the possession of *John E. Clary* is the possession of *Poole ;* and that *Poole* had the horse as a *chose* in possession, and not in action. And it assumes that the sale, by such an instrument as *Poole* executed and acknowledged, (but which was never recorded,) unaccompanied by delivery, did not, as against this defendant, transfer the property to the plaintiffs. The statute of *Elizabeth* (13 *Eliz. Cap.* 5,) is confined, in its protection to creditors, by express limitation—" only as

against that person or persons, &c. whose actions, &c. shall be hindered, &c. &c." but there is no such limitation in the 5th section of the act of 1729. It is general; and the 6th section only saves such sale, as against the vendor and his privies, but not as against other persons.

I am not aware that this precise point has been heretofore proposed for decision. It is one of great practical interest.

4. If the court had granted this prayer, in the terms in which the instruction was demanded, it would have precluded the defendant from impeaching the bill of sale, from *Clary* to *Poole*. The defendant claims, under the creditors of *Clary*, as a purchaser at a sale under executions against *Clary's* property. Now if the bill of sale was fraudulent, as against *Clary's* creditors, then *Poole* had no title, and he could transfer no right to the plaintiffs. Now there could not be " *sufficient evidence* of a sale and delivery, by *Poole* to the plaintiffs, *to entitle the plaintiffs* to *recover*," unless *Poole* had a good title, under the bill of sale from *Clary*.

It is very true that fraud is not to be presumed, but it may be inferred from facts and circumstances, &c. &c. The retainer of possession would not, *per se*, make the bill of sale void. The act of 1729 sanctions this. But it is a fact, with other facts and circumstances—such as the length of time during which *Poole* slumbered on his right;—the user of the property;—the consumption of a part, and the sale of other part; the generality of the conveyance, comprehending all the party's property;—the apparent inadequacy of the price;—the suspicious circumstance of superadding the formality of the delivery of a spoon, &c.— all together, from which the jury might possibly have inferred fraud. It is sufficient objection to the prayer, that it asked an instruction which would have invaded the province of the jury.

5. The prayer went to the extent of asking an instruction, that there was sufficient evidence, &c. *to entitle the plaintiffs to recover in this action.*

Now there was a plea of *non cepit*, and it is very plain that the plaintiffs were bound to shew, upon the issue joined

upon the replication to that plea, that the defendant had pos-
session, at the time of the commencement of this suit.   There
is no such proof in the cause.   The only proof is, that the
defendant *purchased* at the constable's sale; not that he took
the horse away.   We have the fact, that the sheriff *replevied*
the horse from the defendant's possession, but *non constat,*
that he had him in possession at the time of the writ issued.
The *execution* of the writ must have been *after* the issuing of
the writ; and possession at that time does not prove, con-
clusively, that he had possession before.

The questions here submitted, do not depend upon the
statute of frauds, nor upon the *Statute of Elizabeth.*   They
depend, in part, upon the common law; and the third one
upon the construction of the act of 1729, *ch.* 8.

ALEXANDER, for appellants :

In reply to the argument in writing filed by the counsel
for the appellee, the appellants' counsel would ask leave to
submit the following remarks :

*John E. Clary* was the once undoubted owner of the horse
which is the subject of this suit.   He sold the horse to *Poole*
for a valuable consideration, and by a deed, or bill of sale,
duly executed, acknowledged and recorded.   *Poole* then
sold to the appellants.   The appellee claims under a sale
made in virtue of sundry executions against *John E. Clary.*
And the question is whether the appellants or the appellee
have the better title?   The appellants are plaintiffs below,
and must show their better rights.

Upon the evidence offered, the plaintiffs below prayed the
court to instruct the jury that there was sufficient evidence
(if it was believed by the jury) of a delivery by *Poole* to the
plaintiffs, to entitle them to recover in this action—that is to
say, for the purposes of this suit.   The court refused this
prayer, and the question is whether the court below was right
or wrong in this refusal?

The plaintiffs did not ask the court to instruct the jury
that the plaintiffs on the evidence were entitled to recover,

nor that if the jury found there was a delivery from *Poole* to the plaintiffs, the latter would in this event be entitled to a verdict. No such general or comprehensive instruction was asked. Evidence having been offered on both sides of the character of *Poole's* title, upon which a question might have been, and probably was raised before the jury, as to the sufficiency of the delivery by *Poole* to the plaintiffs, the court was asked to instruct the jury in regard to the legal effect of that evidence. This is the point raised by the prayer, and this is the point which was decided by the court.

It is said the court is not bound to give an instruction unless the party has a right to demand it. This is not denied. But will it be pretended that the plaintiffs were not entitled to ask of the court an instruction whether the right of *Poole* in the property was such as was susceptible of a sale and transfer under the circumstances stated? Nor will it be denied that a court may, if it pleases to be despotic, reject a prayer because it is somewhat too broad or exceptionable in its terms. And yet, every one must admit that a judge would sadly forget the duties of his office who should reject a prayer which had substantial merits because of some inadvertent inaccuracy in its language—and more especially, if he should content himself with a simple denial without suggesting the trivial defect which was capable of remedy. If a judge will act in this capricious manner I will not say that this court can or ought to relieve the injured party from the consequences. Yet I may say that this court will always presume that the judge below has fairly met the question which was fairly presented to him, and will as far as practicable adopt such construction of the prayer and the instruction, as will make the one a response to the other, and as will bring up for review the question which was really decided below.

Now no one can doubt as to the intention with which this prayer was submitted. Either it intended to assume that the plaintiffs' right to recover depended on the simple question, whether there had been a sufficient delivery by *Poole* to the

plaintiffs, or it intended to leave every question open, excepting the legal sufficiency of the evidence of delivery.    Is there any thing to shew that the plaintiffs intended to make the case turn upon the question of delivery ?    If there is not, it must follow that every question, save that of delivery, was intended to be unaffected by the instruction.

It is to be assumed then that the prayer is unexceptionable in its form, and the question is, whether there was sufficient evidence of delivery to pass the title to the plaintiffs ?

1. The first objection is that Poole intended to transfer, and in fact did transfer his right or interest in the bill of sale merely as a minument of title, and therefore has conferred on the plaintiffs only an equitable title.

Now, if it be meant that Poole has transferred nothing more than the paper or parchment on which the bill of sale is written, then the plaintiffs will not have acquired even an equitable title to the property.

But if it be conceded that he intended to convey any right to, or interest in the property, it will be very difficult to show that he did not intend to convey such right as he had and legally could convey. If he had a legal title to the property, and that legal title was capable of transfer, there will be little doubt of the legal efficacy of his act.

This first point rests entirely on the gratuitous assumption that the written assignment furnishes the only evidence of the agreement or contract for sale.    But we have shown the contract itself consummated by the payment of the price, on one part, and the delivery of every article but the horse on the other.    And the written assignment is merely as evidence of the assignment.    Will it be said that Poole did not intend to transfer all his right, as well at law as in equity, to all the property which was delivered?    And will it be gravely argued that his intentions in regard to the horse were different from his intentions in regard to the other property ?

2. It is then denied that Poole was in a predicament to make a substantive sale of the horse—and it is argued that

at the time of sale, *Poole's* interest was a right in action, because the *actual* possession was in another.

It is admitted by the counsel for the appellee, that "notwithstanding the vendor (*John E. Clary*) retained possession, the same *interest* was transferred by this bill of sale under the act of 1729, as if possession in fact had accompanied the transfer of the right." And it is also distinctly admitted that *Poole* "could himself have maintained *replevin*," in virtue of the right which he had acquired under his absolute bill of sale. But if *Poole* had been in the *actual possession* of the horse at the time of his sale to the plaintiffs and delivered the residue of the property, we submit that no question could arise as to the validity of the transfer of this horse by that sale. The sale may be executed and the transfer completed by payment of the whole or a part of the purchase money, or of earnest or by delivery of a part of the property. Admitting then that the horse was in actual possession of *Poole*, enough was done to transfer the right to the plaintiffs. And if upon a sale by a person in possession, and upon payment of the purchase money and delivery of a part, the vendee may maintain replevin for the residue, it will be found that no subject or question will remain for controversy here.

The fallacy of the argument on the other side consists, in supposing that *Poole* had acquired from *John E. Clary* nothing more than a *right* or *chose in action*. He is right in distinguishing between a *chose in action* and a *chose in possession*. We are also willing to admit that if a *chose* be not in *possession* it must be *in action*. And further, that if the right of property be not accompanied by possession, *actual* or *constructive*, it is a right or *chose in action*. But it has been yielded by the counsel for the other side that *Poole* acquired the same right or interest by his recorded bill of sale "as *if the possession in fact had accompanied the transfer*," or in other words as if actual possession had been delivered to him. *Poole* then acquired a *constructive possession*, that is a possession by construction or intendment of law—placing him in the same predicament with regard to

his legal rights and remedies, as if he had acquired the actual possession. And therefore by the learned counsel's own shewing, he acquired, and at the time of his sale to the plaintiffs, had something more than a mere *right* or *chose in action.*

Instead of discussing the right of *Poole* to transfer to others a legal right of action, we will endeavour to show that the learned counsel has done right in conceding, that a thing in *possession constructively* differs from a thing *in action.*

An action of *replevin* sounds in *tort,* and is therefore an action of trespass—and the plaintiff may recover indifferently in *replevin* or in *trespass,* commonly so called, upon the same proof of title. In 2 *Stark. Ev.* 805, it is laid down that " in an action for trespass to a personal chattel, the plaintiff may either show *actual* possession, or prove his *title in law* to the possession: for in construction of law the right of property draws after it the possession. And he may, therefore, " show a legal right to the chattel vested in him, although he has never had the actual possession."

In 1 *Chitty's pleadings,* 167, it is said that the plaintiff in trespass must have " an *actual* or *constructive* possession, and also a general or qualified property therein which may be either in the case of an absolute or general owner *entitled to immediate possession,*" &c. &c. *Poole* then, by his bill of sale acquired a *constructive* possession, which in reference to his rights and remedies is tantamount to an *actual* possession. He was therefore capable of transferring a legal title to his vendees—and they can maintain the same action for recovery of their property as if *Poole* at the time of their purchase had been in *actual* possession.

In a subsequent part of his argument, page 5, the learned counsel distinctly admits, that if the possession of *Clary* is the possession of *Poole,* then the horse was a *chose* in possession of *Poole* and not a *chose in action.* But he argues that the act of 1729 does not consider the possession of the vendor as the possession of the vendee.

It is submitted that at common law, and under the statute

of frauds, the property is transferred by payment of the purchase money, and the actual possession of the vendor is by that event changed into the constructive possession of the vendee. The act of 1729, does not interrupt these consequences. But merely provides that the *constructive* possession of the vendee shall not prevail against the creditors of the vendor, who is permitted to remain in actual possession, unless the evidence of right be placed on record.

There may be a right of possession in one, as opposed to the actual possession wrongfully acquired by another. But as between a vendor and vendee there can be no such thing as an *immediate right of possession* as could be distinguished from a *constructive possession*. This may be shown by a single case. A, in possession, sells to B. C then takes the goods out of the actual possession of A. By whom is the action for the recovery of these goods to be brought? If B acquired the possession by construction of law, then the wrong was done to him, and he may have his action. But if he acquired nothing more than an immediate right of possession, then the action must be brought by A; unless it be contended that a *trespass* can be committed against a *chose in action*. It is submitted that all the authorities prove the action may be brought by B.

It is supposed in the argument of the other side, that if *John E. Clary's* possession was adverse, the case would be clear of doubt. We need not controvert this position, as it would be impossible to show that *Clary's* possession was adverse. *Clary* did not hold adversely. The evidence is not offered to show an adverse holding, and if it had been so offered the instruction prayed for if given, would have been right, as it only charged that the jury from the evidence might or might not find a delivery.

3. The third argument is, that if *Poole* had constructive possession, his sale transferred no right to the plaintiffs, as possession did not accompany the sale, and his assignment was not recorded. The principle of this objection is, that *delivery of possession* or a *deed recorded,* is essential to the

validity of a sale of personalty as against all persons but the vendor and his representatives—and it is attempted to derive this principle from the act of 1729, ch. 8.

It has always been supposed that this act avoided conveyances or sales in favour of creditors and subsequent purchasers only, and continued them in force against the vendors and all others except creditors and purchasers. The act had for its object the protection of those classes, and the remedy has been extended so far as was necessary to attain that object and no further.

At common law a sale was good if made by *parol*, and the right was bound as against all the world by payment of the purchase money. It is true that retaining the possession by the vendor was always a *badge* of fraud—but it did not *per se* vitiate the sale even as against creditors, as is evident from *Twyne's* case. The plaintiffs then acquired a good title at common law. They acquired a good title under the statute of frauds. Is that title affected by the act of 1729? It is not, because that act was passed for the protection of creditors and purchasers, and the defendant cannot assume either character.

It is supposed that this question is unaffected by decisions. But the learned counsel is in error. In *Hudson vs. Warner & Vance*, 2 Har. and Gill, 415 : The first deed to *Warner & Vance* was void for want of recording. The second deed to *Hudson* was for valuable consideration, and perfect in all its parts, and accompanied by delivery of possession. Yet *Hudson* was postponed to *Warner & Vance*, because he took, with notice of their claim. Upon the principle now contended for their title was good for nothing. For it cannot be pretended that *Hudson* stood in a worse predicament than a *mala fide* or tortious possessor. The court of Appeals evidently considered, that the title of the first purchasers was good as against all but creditors and *bona fide* purchasers for valuable consideration and without notice.

4. It is next supposed that the instruction, if given, would have precluded the plaintiff from impeaching the sale from

*Clary* to *Poole.* The first answer to this objection is, that no effort was made to impeach that sale. It is apparent that the proofs were offered to raise a question as to the competency of *Poole* to sell to the plaintiffs, on the assumed hypothesis that the sale from *Clary* to him was good. It is conceded that fraud may be inferred from circumstances—nor is it material to deny that fraud might be inferred from the circumstances proved in this case, if the proofs had been offered for that purpose. But the proofs were not offered for that purpose. And as fraud is not to be presumed, it may be fairly argued that the court will not presume that the party intended to raise a question of fraud, on evidence which is apparently offered for a very different purpose. Why did he not say that he intended to charge the parties with fraud?

But the prayer has no such effect as is alleged—it merely asks an instruction that the jury *may infer, &c.* and if it be admitted that the jury, from the evidence, might have found *there was fraud,* it must also be conceded to us that the jury were also at liberty to find *there was not fraud.*

5. It is then objected that the plaintiff did not offer sufficient evidence of a taking to entitle him to a verdict on the plea of *non cepit.*

We have before remarked that the only question raised, was whether the plaintiffs had offered evidence of a delivery by *Poole* to them. The prayer concluded no other question, and the consequence is, that if the instruction had been granted, the defendant might still have relied on the insufficiency of proof as to the taking.

But there was evidence from which a taking might have been inferred—the defendant was in possession at the service of the writ—a few days after it was issued. When did he acquire possession? He acquired title at a sale made a long time before, by a constable—he was in actual possession at the time, and to whom he paid ready money. Is it not a fair inference that he acquired possession immediately after the sale?

STEPHEN, Judge, delivered the opinion of the court.

The question involved in this case has been argued with considerable ingenuity, by the counsel for the respective parties, and has received the attentive consideration of the court; and upon the most careful examination of the authorities which we have been able to make, we have come to the conclusion, that there is error in the opinion delivered by the court below, and that the same ought to be reversed.

The bill of sale from *John E. Clary* to *Poole,* being executed, acknowledged and recorded, according to law, was valid, and effectual to pass the legal title to him, notwithstanding the actual possession of the property conveyed, did not accompany the transfer of the right.   4 *Har. and John.* 446.   *The interest* which a vendee takes under such a bill of sale, is the same in legal effect and operation, as if there had been an actual delivery of the property transferred.   The vendee by the execution, enrolment, and delivery of the deed, is clothed, and invested with the constructive possession of the property, and is legally competent to convey it to any third person, to whom he may think proper to dispose of it.   The enrolment is a substitute for, and takes the place of actual delivery, and repels all those imputations of fraud which would arise from the retention of possession by the grantor.   Such being the character of the title acquired by *Poole,* the question next arises as to the legal effect and operation of his assignment to the plaintiffs in the court below, and the appellants in this court.   His assignment and sale of the property was, it appears, endorsed in writing upon the bill of sale from *Clary* to him; the purchase money was paid, and a part of the property sold was delivered.   Such at least was the evidence offered to the jury, upon which the opinion and direction of the court to them, was prayed by the plaintiffs.   Not only was there an actual delivery of the property in part, but an ineffectual effort was also made to deliver the horse, the subject matter of the present controversy.   This attempt to deliver, which was made by going to the house of *John E.*

*Clary*, on the day following the execution of the assignment from *Poole* to the plaintiffs, failed of its execution in consequence of the absence of the horse, in the possession of *Clary*, who had then rode him from home. Finding the attempts to make an actual delivery at that time abortive, the plaintiffs were assured that they would certainly get the horse, and were told by *Poole* to go and get him wherever he might be found. Considering the light and transitory nature of personal property, how deeply and extensively it enters in commerce, and how incessantly it circulates from hand to hand, in the ordinary transactions of man with man, less ceremony is required by the law, and more facility is given in the transfer of it, than is observed in the disposition of real estate. In accordance with this view of its character, it is said in *Ross on Vendors*, 34, that in the infinite number of transitions from hand to hand, of which property is susceptible, in the mercantile world, very few sales are perfected by actual delivery of the thing sold ; hence it is, that the law recognizes in many instances as valid and effectual, a constructive, instead of an actual delivery, where such a delivery cannot readily or conveniently be made. In this case there was not only a sale, in writing, of the horse, but the purchase money was paid, the property of the chattel was therefore vested in the vendee by the bargain and payment of the purchase money.

In 2 *John. Rep.* 16, *Thompson, Justice*, in delivering the opinion of the court, says : " *Blackstone* in his commentaries lays down the rule generally, that a bargain struck, and payment of the purchase money, vests the property of the chattel in the vendee. To illustrate his rule he puts the case of a horse dying in the possession of the vendor after payment of the consideration, and the loss he says must fall on the vendee. This I apprehend to be the rule in all cases, on the sale of a specific chattel, where the identity of the article cannot be controverted.

The inference of law being, that the vendor is a mere bailee retaining the possession at the request of the vendee.

The sale is not executed, so as to vest the property in the vendee, without an actual or a presumed delivery, and the latter is to be inferred from circumstances, as where there is a designation of the goods by the vendor to the use of the vendee—marking them, or making them up for delivery—the removing·them for the purpose of being delivered, and the like. In support of which doctrine, he refers to 1 *Henry, Black.* 363. In the same case, he says, "In the present case there is no controversy respecting the identity or designation of the beef sold, nor does it appear, but that the plaintiffs purchased the whole, which the defendants had· in their store-house. The only testimony respecting the delivery, was that of *James Giles,* who swore, that at the time the money was paid for the beef, he understood it was to remain in the defendant's slaughter-house, until it was shipped to *New York.* Under these circumstances I should suppose, that the inference of law would be, that it was at the risk of the vendee, with respect to future damage, unless occasioned by the gross negligence of the vendor. If there was a delivery, the present action is not maintainable, it being founded on a supposed breach of contract, for non-delivery. But we are not authorized by the case to direct a non-suit to be entered. We can, therefore, only award a new trial, with costs, to abide the event of the suit."—"In this case there was nothing from which to infer a delivery of the property, but the payment of the purchase money, and the understanding that it was ·to remain with the vendor until it was shipped to *New York.* In a note to be found in *Com. on Cont.* 137, this case is referred to as establishing the principle, that if, on the sale of goods, the purchase money be paid, though the goods are suffered to remain in the possession of the vendor, by agreement or otherwise, this will be deemed a constructive delivery. There can be no doubt that a delivery of property sold, may be presumed from circumstances, and that an actual delivery is not in all cases necessary to pass the property. Instances have been already mentioned where a delivery may be presumed. So if the vendor gives to the

vendee an order on a third person, in whose possession the goods are, for their delivery, it is sufficient to take the case out of the statute of frauds.   In 3 *Caines' New York Term Rep.* 186, *Mr. Justice Spencer*, in delivering the opinion of the court says, when speaking of such an order, " The order itself is a delivery so as to prevent the operation of the statute," and for this principle refers to the case of *Searle vs. Keener*, 2 *Esp. Rep.* 598.   The facts of that case were as follows, in an action for not delivering a quantity of rice, it appeared that the defendant had informed the plaintiff, that defendant had a quantity of rice to sell : there was no evidence to prove any contract made, but the plaintiff produced an order on *Bennet & Co.* to deliver to him twenty barrels of rice, which was signed by defendant, and a witness proved, that defendant had told him, that he had sold twenty barrels of rice to the plaintiff, at 17*s.* per hundred.   The plaintiff then proved the delivery of the order for the rice, to the warehouseman of *Bennet & Co.*   The rice not having been taken away immediately, the defendant afterwards countermanded the delivery, in consequence of which *Bennet & Co.* refused to deliver the rice to the plaintiff, who sent for it some days after the order had been countermanded.   *Eyre, Ch. J.* was of opinion, that the order for delivery, directed to the person in whose possession the rice was, amounted to a delivery, so as to take the case out of the statute.   Upon the execution and enrolment of the bill of sale in this case, made by *John E. Clary* to *William H. Poole*, and upon the payment of the purchase money which is admitted by the deed offered in evidence to the jury, there can we think be no doubt, that the property passed to *Poole*, and that the actual possession being retained by *Clary*, he must be considered as holding the same merely as the bailee of *Poole*, and subject to his disposal.   This being the character and capacity in which he held the property, the transfer and sale by *Poole* of all his right and title to the appellants in this case, by the execution and delivery of his written assignment for the same to them, operated as an order from him upon *Clary*, for the delivery of the horse

then in his possession, and being considered in that respect, was sufficient evidence to go to the jury to prove a delivery in this case. If this view of the law be correct, the court below were in error in their refusal of the plaintiffs' prayer, for their opinion and instruction to the jury.

But there is another aspect under which this case may be considered, which entitled the plaintiffs to the instruction solicited from the court below. We have assumed that the ground upon which the prayer of the plaintiffs was refused, was the want of sufficient proof of a delivery of the horse sold by *Poole* to the appellants. If they acquired the legal title and property of the horse by the purchase, in legal construction, the legal title drew after it the constructive possession, which we think might well operate in law as a constructive delivery, it being a rule of law that the general property of personal chattels, *prima facie*, draws to it the possession. 2 *Philips' Evid.* 133, in a note and the cases there cited. So in 2 *Wheat. Sel.* 524, we find the same principle established, where in trover the plaintiff as executor declared upon the possession of his testator, it was holden to be sufficient, because the personal property of the testator was vested in the executor, and no other person having a right to the possession, the property drew after it the possession in law. It moreover appears that a part of the goods sold, were delivered by the vendor to the vendees, and accepted by them, and the horse being absent in the possession of *John E. Clary*, the original vendor, they were assured by their vendor, that they would surely get him, and they must go and get him wherever he might be. On the following day they went in pursuit of the horse, and found him in the possession of a constable by whom he was sold to the defendant as the property of *John E. Clary*, the original owner of him. Although there was no proof of an actual delivery of the horse by *Poole* to his vendees, yet as the horse was in the possession of *John E. Clary*, as the bailee of *Poole* at the time he made his sale to the plaintiffs, and at the time he went to his house to make an actual delivery of him to them,

and when the direction was given to go and take possession of him wherever he might be found. We think the proof was sufficient to pass the property and right of possession, which alone are sufficient to support the action of *replevin*, and that the plaintiffs' prayer to the court below, ought to have been granted. The judgment of the court below is therefore reversed.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.