# SUPERIOR COURT OF BALTIMORE CITY.

Filed February 3, 1923.

---

CLARENCE M. ROBERTS

VS.

J. FRANK DUDLEY, ETC.

---

*Messrs. Marbury* and *Perlman* for plaintiff.
*William Stanley* for defendant.

STEIN, J.—

Since the filing of the motion for a new trial I have considered again the principles which controlled my action on the prayers and my verdict on the evidence; have reduced them to writing for the benefit of counsel.

The action is trover, brought by the plaintiff, an attorney-at-law, practicing in Prince George's County, Maryland, against the defendant, a commission merchant carrying on business in Baltimore City, to recover the value of certain tobacco belonging to the plaintiff which the defendant is charged with having converted to his own use. The testimony shows: The plaintiff had for collection a number of notes of J. Irving Parker, each containing the usual power of attorney to confess judgment upon the *"ex parte"* application of its holder. Before having judgment extended, the plaintiff examined the Chattel Records of Prince George's County, found they did not contain record of any conveyance of personal property which Parker owned, or in which he was interested; prepared the

papers necessary to have the Circuit Court for Prince George's County extend the judgment on the notes under the powers therein; saw Mr. Parker, told him that "unless, he Parker, secured the payment of these notes by the execution of a bill of sale on his half interest in a crop of tobacco and certain other personal property then situate in Prince George's County, Maryland, judgment would be extended against him for the entire amount due on these notes, and execution issued thereon at once. After some discussion with the plaintiff, in which Parker said he wished to pay some bills out of the proceeds of the sale of his interest in the tobacco and other of his crops, Parker gave the plaintiff a bill of sale upon certain personal property, among which was his above undivided half interest in a crop of tobacco raised in the year 1920 on the farm of William B. Claggett, in Millwood District, Prince George's County, Maryland, which tobacco was then stored in the barns of that farm in that county. The bill of sale, confessedly given as security, recites a consideration of ten dollars, was executed, acknowledged and recorded in the Circuit Court for Prince George's County, in which county the tobacco was stored and in which Parker then and now resides, was in proper legal form, was recorded at the place and within the time required by sec. 47 of Art. 21, 1 Bagby's Code, page 508.

As he only had an undivided half interest in the tobacco, Parker under the names of Claggett & Parker, consigned part of his crop of tobacco to Baltimore, to the defendant, a commission merchant, to be sold on commission. The defendant sold it, retained the entire net proceeds due Parker, for advances made Parker in 1920, upon the faith of Parker's then oral statement, that to cover such advances the defendant could have a lien on Parker's interest in the tobacco and that out of the proceeds of the sale thereof the defendant could deduct such advances. When he learned of this for a lien the plaintiff demanded the defendant to pay to him Parker's interest in the proceeds of sale; on the refusal to pay, brought this suit in trover. At the trial it was agreed that Parker's interest in the net proceeds should stand in lieu of the tobacco.

No point was made either of the price for which the tobacco was sold, or of the formal sufficiency of the bill of sale.

The plaintiff based his right to recover on the priority of the lien of his bill of sale; the defendant denied such right, claiming priority for his lien for the above advances.

The evidence and prayers are intended to raise the following questions, viz:

1. Did the lien of the bill of sale follow and attach to the tobacco after it was shipped out of Prince George's County, Maryland, the county in which the tobacco was situate, and in which the bill of sale was recorded?

2. Has this lien been lost by the plaintiff's conduct?

3. Is this lien limited to ten dollars, the consideration named in the bill of sale, under sections 2 and 3 of Article 66, Bagby's Code, p. 1518 and 1519?

4. Has the defendant a prior lien for his advances, either at common law or under sections 1 and 2 of Article 2, Bagby's Code, page 118.

Discussing them in the above order:

## I.

### As to the Extra-territorial Effect of the Bill of Sale

Save perhaps in the cases of Fister vs. Beall's Admrs., 1 H. & J. 32, and Stiefel vs. Barton, 73 Md. 408-411, there are no express decisions of the Court of Appeals of Maryland upon the extra-territorial lien of a bill of sale or chattel mortgage. The cases in other States hold as a unit that a bill of sale or chattel mortgage properly executed, acknowledged and recorded under the law of the State in which the property is situate, binds that property, when taken either out of the county or out of the State in which the property was situate when the instrument was executed and recorded.

"The general concensus of judicial opinion seems to be that when personal property which at the' time is situate in a given State is there mortgaged by the owner and the mortgage is duly executed and recorded in the mode required by the local law, so as to create a valid lien, the lien remains good and effectual although the property is removed to another State, eith-

er with or without the consent of the mortgagee, and although the mortgage is not recorded in the State in which the removal is made." 5 R. C. L., sec. 21, page 399; 5 R. C. L., sec. 68, page 987.

"Recording in the proper county is constructive notice in any other town or county to which the goods are removed by the mortgagor." Ibid., page 400, see note 17; Brantly on Personal Property, sec. 231; Hammels vs. Seutous, 12 Anno. Cases. 945, note and 947.

"In the absence of any specific statutory provision regarding the removal of mortgaged property, the record of a chattel mortgage in the town or city where it is required to be filed originally is constructive notice to all the world and the mortgage is valid even though the property is removed to another town or city." Grand Island Banking Co. vs. Frey. 25 Neb. 66; 13 A. S. R. 478 and 481; Snider vs. Yates, 64 L. R. A. 353-356, etc.; Jones on Chattel Mortgages, 5th Ed., secs. 260. 260-A.

The reason for the doctrine therein announced applies with equal force to bills of sale.

The first legislation in Maryland requiring the recording of bills of sale and chattel mortgages, was:

Chapter 8 of the Acts of 1729, approved July 10, 1729. in which substance stated that:

"No goods or chattels whereof the vendor, mortgagor or donor shall remain in possession shall pass, alter or change, or any property thereof be transferred to any purchaser, mortgagee or donee, unless the same be by writing and acknowledged before one provincial justice or one justice of the county where such seller, mortgagor or donor shall reside, *and be within twenty days recorded in the same county.*"

The title shows object of this act to be:

"To prevent fraud and deceits occasioned by secret sales, mortgages and gifts of goods and chattels."

"The Act of 1729, Chap. 8, has for its objects the suppression of secret sales." Hudson vs. Warner, 2 H. & G. 430, 431.

The bill of sale from Clary to Poole being executed, acknowledged and re-corded according to law was valid and effective to pass the legal title to him, notwithstanding the actual possession of the property conveyed, did not accompany the transfer of the right. The interest which the vendee takes under such a bill of sale is the same in legal effect and operation, as if there had been an actual delivery of the property transferred. The owner by the execution, enrollment and delivery of the deed is clothed and invested with the constructive possession of the property, and is legally competent to convey it to any third person to whom he may think proper to dispose of it. The enrollment is a substitute for and takes the place of actual delivery, and repels all the imputations of fraud which would arise from the retention of possession by the grantor. Clary vs. Frayer, 8 G. & J. 398-416.

While the case of Fister vs. Beall's Admr., 1 H. & J. 32, decided by the Court of Appeals in the November Term, 1802, does not have great persuasive force, yet it has some such force. It was an action of replevin to recover possession of a horse in which evidence was given of following, viz:

"That Perry Beall, then owning the horse in question, conveyed it to Brook Beall by a bill of sale duly executed, acknowledged and recorded, as the law directed, among the records of Montgomery County, in which county the above vendor then resided; that after the execution of the bill of sale the vendor with the vendee's assent remained in possession, rode it to Frederick Town; there gambled it away at cards to one Madero, and by other transfers, the horse became the possession of Fister, who was the defendant in the replevin suit brought by the vendee in the bill of sale, who thereafter died, which suit was continued by his administrators. The defendant 'demurred to the evidence,' which was overruled. From a judgment for the plaintiff's the defendant appealed. The General Court reversed the County Court, holding that the suit had abated and that the administrators could not prosecute the action. The plaintiffs appealed—the Court of Appeals reversed the General Court, sustained the County Court; thereby upholding the bill of sale and its extra-territorial effect."

194

In Stiefel vs. Barton, *supra*, the Court of Appeals struck down a general assignment for the benefit of the grantors' creditors, because the deed of trust, as was required by the then law, was not recorded in Prince George's County, in which the grantor resided, although most, if not nearly all of the property passing under that deed was personal property situate in Baltimore City, *vide*, record of that case, page 3, thus apparently recognizing the extra-territorial effect of the recording of the deed of trust.

From these authorities I hold that the lien of the bill of sale was not lost by the shipment to Baltimore.

## II.

The defendant claims the lien of the bill of sale has been lost because:

A. The plaintiff knew the tobacco would be shipped to Baltimore to be sold in the name of Parker and assented thereto.

B. He agreed that the money due the defendant for his advances should be paid before the plaintiff's claim.

This depends upon the testimony on these points which conflicts; the surrounding circumstances must determine the weight of the evidence.

Here we have an experienced lawyer employed to collect a claim, with papers drawn on which, if presented to the Court, a judgment would have been extended, and an execution could have been issued at any time, under which all of Parker's property, subject to execution, seized and sold. Is it likely that the plaintiff, an experienced lawyer, would have surrendered this advantage, assented to the payment of the defendant's advances, *the amount of which he did not know*, and which in fact were larger than that so far realized from the sale of the tobacco? The testimony does not contain any action or conduct of the plaintiff, expressed or implied, to show he assented to the shipment of the tobacco to the defendant, so as thereby to subordinate his lien under the bill of sale to the defendant's lien for advances. It shows the plaintiff knew the tobacco would be sent out of Prince George's County to be sold by a commission merchant; that he knew Parker's interest was an undivided moiety; that he did not know and was not told when, where, by whom or to whom or in whose name the tobacco would be shipped. From all the evidence I find (a) that the plaintiff did not know and did not assent to the shipment of the tobacco to Baltimore in the names of Claggett & Parker to be sold by the defendant, and (b) that the plaintiff did not by his conduct, either expressly or impliedly, waive or lose his lien under the bill of sale.

## III.

Is the lien of the bill of sale limited to ten dollars, the consideration named therein?

This question is based upon sections 2 and 3 of Article 66, 2 Bagby's Code, pp. 1518, 1519, which say, in effect:

"No mortgage or deed in the nature of a mortgage shall be a lien on any estate or property for any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage and be specified and recited therein, and particularly mentioned and expressed to be secured thereby at the time of executing the same."

They do not apply because a bill of sale is not a deed in the nature of a mortgage. By such deed is meant a deed which shows on its face that it is security; a deed in form cannot be a deed in the nature of a mortgage.

In the bill of sale under which the plaintiff claims no principal sum is specified or recited, nor does any appear therein as mentioned or secured thereby. The consideration is ten dollars, the paper on its face is an absolute transfer of title, is not a security for a debt or an advance.

"By the legal formal mortgage, as distinguished from instruments *held to be mortgages by construction of Courts of Equity*, the property is conveyed or assigned by the mortgagor to the mortgagee in form like that of an absolute legal conveyance, *but subject to a provision or condition* by which the conveyance is to become void, or the estate to be reconveyed upon payment to the mortgagee of the principal sum secured with interest, on a day certain, and upon non-performance of this condition, the mortgagee's estate becomes absolute at law, and he may take possession thereof, but it remains redeemable in equity during a certain period under the rules imposed

by Courts of Equity or by statute." Bank of Commerce vs. Lanahan, 45 Md. 396, 407.

Under the language above recited, the bill of sale is an instrument that would be held to be a mortgage by construction of a Court of Equity, the necessity for which in this case is obviated by the plaintiff's very frank admission at the threshold of the case that the bill of sale was given to secure the notes above named. These sections of the Code are well known to have been passed to break up the practice of giving advance mortgages to secure unknown sums or debts to be advanced or incurred in the future. They can not apply either in language or in spirit to the bill of sale in this case.

### IV.

The defendant cannot have a lien for his advances, either under Code sections 1 and 2, Article 2, page 118, or at common law.

1. Because under these sections agricultural products are expressly exempt from any lien for advances. Tobacco is an agricultural product.

2. Because at common law the defendant could not have a lien until the tobacco came into his possession, and when it came into his possession it was subject to the lien of the bill of sale.

The testimony shows that when the defendant made his advances to Parker the tobacco named in the bill of sale was in Parker's possession, in Prince George's County; that these advances were made to Parker without the plaintiff's knowledge and long before the execution and recording of the bill of sale to him, and *that the tobacco never* came into the defendant's possession until after the bill of sale was made and recorded. The defendant's lien, if any, for his advances must be subject to the plaintiff's lien under his bill of sale, which is greater than the sum realized from the sale of Parker's interest in the tobacco.

"To constitute a valid pledge of personal property, a transfer of the thing pledged to the pledgee or third party for his benefit is essential." Textor vs. Orr. 86 Md. 392.

"Nor can the agreement be effective as a bill of sale or chattel mortgage as against third parties, because it is not acknowledged and recorded as required by the Code in all cases where the seller or mortgagor of chattels remains in possession." Ibid., bottom page 397. Ober vs. Keating, 77 Md. 100.

From the authorities cited, I hold as a matter of law:

A. That the plaintiff's lien under the bill of sale is superior to the defendant's lien for his advances.

And on the evidence, as a matter of fact, I find.

B. That the plaintiff, by his conduct, expressed or implied, has not lost or waived his lien under the bill of sale, and did not know or assent to the shipment to defendant of the tobacco and did not assent to the payment of his advances.

The defendant offered eleven prayers. For the reasons above named, I granted each of the fourth, fifth and eleventh and refused the others.

I have overruled the motion for a new trial.